UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

**DION DAVITIAN**
9201 Kristin Lane
Fairfax, VA 22032

       *Plaintiff,*

   v.

**CHARLES P. PARET,** *individually*
1140 3rd Street NE, Ste. 2152
Washington, DC 20002-7900,

**433 KENNEDY ST HOLDINGS LLC**
1140 3rd Street NE, Ste. 2152
Washington, DC 20002-7900

SERVE:  Charles Paxton Paret, Resident Agent:
      1140 3rd Street NE, Ste. 2152
      Washington, DC 20002

and

**429 KENNEDY ST HOLDINGS LLC**
1120 Congress Street, NE
Washington, DC 20002-7935

SERVE:  Charles Paxton Paret, Resident Agent:
      1120 Congress Street NE
      Washington, DC 20002

       *Defendants.*

Case No. _____

## VERIFIED COMPLAINT AND CONFESSION OF JUDGMENT

      Plaintiff, Dion Davitian ("Davitian"), by and through his attorneys, Mary Craine Lombardo, Esq., and RLG Law, hereby sues Defendants Charles P. Paret ("Paret"), 433 Kennedy St Holdings, Limited Liability Corporation, ("433 Kennedy St") and 429 Kennedy St Holdings, Limited Liability Corporation, ("429 Kennedy St").



PARTIES & JURISDICTION

1.      Davitian is a resident of Fairfax County, Virginia.

2.      Upon information and belief, Defendant Charles Paxton Paret is a resident of Washington, D.C.

3.      Upon information and belief, 433 Kennedy St Holdings LLC ("433 Kennedy") is a limited liability corporation organized under the laws of District of Columbia with its principal place of business in Washington, D.C.

4.      Upon information and belief, 429 Kennedy St Holdings, LLC is a limited liability corporation organized under the laws of District of Columbia with its principal place of business in Washington, D.C.

5.      This Court has personal jurisdiction over Defendants.

6.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 as the amount in controversy exceeds $75,000 and the plaintiff is of different citizenship than all defendants.

STATEMENT OF FACTS

Davitian adopts and incorporates the allegations contained in the foregoing paragraphs of this Complaint as if fully set forth herein, and further alleges that:

7.      429 Kennedy St Holdings LLC and 433 Kennedy St Holdings LLC (collectively "the LLCs") borrowed $875,000.00 from Davitian under the terms of a Deed of Trust Note dated July 10, 2020 (the "Note")

8.      A true and correct copy of the Note is attached hereto as Exhibit "A."

9.      The Note provided that interest would accrue on the unpaid principal balance at the rate of 10% per annum. *See* Note at 1, § a,



10.     The Note defines an "Event of Default" as the failure to pay any principal or interest due when due and with such default continuing for ten days. *See* Note at 1.

11.     The Note further provides that upon the occurrence of an "Event of Default" the default interest rate of 15% shall apply. *See* Note at 2.

12.     The Note further provides that to the extent any installment is unpaid and the balance of principal remains unpaid on the Maturity Date, Davitian is entitled to collect a "late charge" of 5% of all unpaid amounts. *Id.*

13.     The "Maturity Date" is denied as the Note as sixty days "from the date hereof" or September 8, 2020. *Id.*

14.     The Note also provides that Davitian may recover his attorneys' fees and costs incurred in enforcing the Note against the LLCs.

15.     The Note contains a confession of judgment clause allowing Davitian to "confess judgment against borrower without prior notice or opportunity of borrower for prior hearings… for the full sum due hereon, plus court costs and attorneys' fees." *See* Note at 5.

16.     By written Guaranty Agreement executed on the same date (the "Guaranty Agreement"), Defendant Charles Paret ("Paret") unconditionally and personally guaranteed the obligations of the LLCs under the Note. *See* Guaranty Agreement at 1.

17.     A true and correct copy of the Guaranty Agreement is attached hereto as Exhibit "B."

18.      The Guaranty Agreement also contains a confession of judgment clause. *See* Guaranty Agreement § 5.16.



19.     The Guaranty Agreement similarly allows Davitian to recover his attorneys' fees and costs from Paret.

20.     The LLC failed to make payments or to pay the principal by the Maturity Date.

21.     By letter dated January 5, 2021 Davitian issued a Notice of Default.

22.     A true and correct copy of the Notice of Default is attached hereto as Exhibit "C".

23.     As of that date, the amounts due were comprised of $875,000 in principal unpaid balance, $5,104.17 in interest and $43,750 in late charges.

24.     As of the date of the filing of this Complaint, the principal balance of $875,000 remains unpaid.

25.     As of the date of the filing of this Complaint, pre-default interest in the amount of $5,104.17 remains unpaid.

26.     As of the date of the filing of this Complaint, default interest in the amount of $90,052.08.

27.     As of the date of the filing of this Complaint, pre-default late charges in the amount of $4,502.00 remains unpaid.

28.     As of the date of the filing of this Complaint, late charges on the principal amount due at maturity in the amount of $43,750.00 remains unpaid.

29.     Paret is a sophisticated businessman and the loans were taken for the purpose of investment in real property.

30.     Paret was represented by counsel in the negotiation and preparation of the Note and Guaranty Agreement.

**COUNT I**
**Breach of Contract: Deed of Trust Note**
**(Davitian v. the LLCs)**

Davitian adopts and incorporates the allegations contained in the foregoing paragraphs of this Complaint as if fully set forth herein, and further alleges that:



31. The parties entered into a valid and enforceable agreement in the form of the Note.

32. Davitian performed his obligation under the Note.

33. The LLCs breached the Agreement, and the breach was material.

34. Davitian suffered damages as result of the breach.

WHEREFORE, Davitian Dion Davitian request that this Court enter judgement in favor of Davitian and against Defendants 429 Kennedy St Holdings, LLC and 433 Kennedy St Holdings, LLC an amount in excess of $75,000.00 as well as interest, late charges, attorneys' fees, costs, and such other and further relief as the Court deems just and proper.

**COUNT II**
**Unjust Enrichment**
**(Davitian v. the LLCs)**

Davitian adopts and incorporates the allegations contained in the foregoing paragraphs of this Complaint as if fully set forth herein, and further alleges that:

35. Davitian conferred a benefit upon the LLCs in the form of the loan of $875,000.

36. It would be inequitable under the circumstances to allow the LLCs to retain the benefit of Davitian expenditures despite the breach.

WHEREFORE, Davitian Dion Davitian respectfully request that this Court enter judgment in this favor and against Defendants 429 Kennedy St Holdings, LLC and 433 Kennedy St Holdings, LLC in an amount in excess of $75,000 as well as interest, late fees, attorneys' fees, costs, and such other and further relieft as the Court deems just and proper.

**COUNT III**
**Breach of Contract-Guaranty Agreement**
**(Davitian v. Paret)**

Davitian adopts and incorporates the allegations contained in the foregoing paragraphs of this Complaint as if fully set forth herein, and further alleges that:



37. The parties entered into a valid and enforceable agreement in the form of the Guaranty Agreement.

38. Davitian performed his obligations under the Guaranty Agreement.

39. Paret breached the Guaranty Agreement and the breach was material.

40. Davitian suffered damages as a result of the breach.

WHEREFORE, Davitian Dion Davitian respectfully request that this Court enter judgment in this favor and against Defendant Charles P. Paret in an amount in excess of $75,000 as well as interest, late fees, attorneys' fees, costs, and such other and further relieft as the Court deems just and proper.

**COUNT IV**
**Unjust Enrichment**
**(Davitian v. Paret)**

Davitian adopts and incorporates the allegations contained in the foregoing paragraphs of this Complaint as if fully set forth herein, and further alleges that:

41. Davitian conferred a benefit upon Paret in the form of the loan to the LLCs in the amount of $875,000.

42. It would be unequitable under the circumstances to allow Paret to retain the benefit of Davitian's expenditures despite the breach.

WHEREFORE, Davitian Dion Davitian respectfully request that this Court enter judgment in this favor and against Defendant Charles P. Paret. in an amount in excess of $875,000 as well as interest, late fees, attorneys' fees, costs, and such other and further relieft as the Court deems just and proper



Respectfully submitted,

RLG Law

By: _____
Mary Craine Lombardo, Esq. (495881)
51 Monroe Place, Ste. 1401
Rockville, Maryland 20850
T: (301) 340-2020
F: (301) 340-1992
Mlombardo@rlg-lawyers.com
*Attorneys for Davitian*

## VERIFICATION

I hereby certify that the facts stated in the above complaint are true and correct.

_____
Dion Davitian



# EXHIBIT A

DEED OF TRUST NOTE

FOR VALUE RECEIVED, as of this 10th day of July, 2020, the undersigned, 433 KENNEDY ST HOLDINGS LLC, a District of Columbia limited liability company and 429 KENNEDY ST HOLDINGS LLC, a District of Columbia limited liability company (collectively, the "Borrower"), promise to pay to the order of DION DAVITIAN, with offices at 9201 Kristin Lane, Fairfax VA 22032, its successors and assigns (the "Lender"), at such offices or at such other place or places as the Lender may from time to time designate in writing, the principal sum of EIGHT HUNDRED SEVENTY FIVE THOUSAND AND NO/100 DOLLARS ($875,000.00), together with interest at the rate or rates hereinafter provided until paid, said principal and interest being due and payable as follows (with all additional capitalized terms used herein having the meanings set forth in the "Definitions" section hereinbelow or in other sections of this Note):

INTEREST RATE AND PAYMENT:

(a)     Interest shall accrue upon the unpaid principal balance of this Note at the rate of ten percent (10%) per annum; and

(b)     Interest accrued hereunder during each calendar month shall be due and payable in arrears on the first (1st) day of the next succeeding calendar month, commencing with payment of the interest accrued hereunder during the current calendar month on the first (1st) day of the first (1st) calendar month following the date hereof and continuing on the same day of each and every calendar month thereafter until the Maturity Date; and

(c)     If not sooner paid, the entire balance of principal remaining unpaid, plus interest accrued thereon at the aforesaid rate not previously paid, fees and costs, if any, shall be due and payable in full on the date which is sixty (60) days from the date hereof (the "Maturity Date").

DEFINITIONS:

As used in this Note, the following terms shall have the meanings set forth below:

"Deed of Trust" shall mean the Deed of Trust and Security Agreement from Borrower to Richard Whelton/First American Title Insurance Company for the benefit of Lender dated of even date herewith to be recorded among the Land Records of the District of Columbia securing this Note, together with any and all modifications thereof and supplements thereto (the terms and provisions of which are incorporated herein by this reference as if set forth in full).

"Event of Default" shall mean the following:  (a) if the Borrower shall default in any payment of principal and/or interest due under this Note when and as the same shall become due and payable and such default continues for a period of ten (10) days thereafter; (b) if the Borrower shall default in the performance of any other covenant contained in this Note and such default remains uncured beyond the applicable cure period, if any; or (c) if an Event of Default, as defined therein, occurs under the Deed of Trust.

"Interest Period" shall mean a period of one month, provided that the first Interest Period shall expire on the last day of the current calendar month and the last Interest Period shall not extend beyond the date which all sums due hereunder have been paid in full.

"Mortgaged Property" shall mean the Mortgaged Property described in the Deed of Trust.

"Security Documents" shall mean the Deed of Trust and the additional Security Documents as defined in the Deed of Trust.

ADDITIONAL TERMS:

For purposes of computing interest on the debt evidenced hereby, interest shall be calculated on the basis of a three hundred sixty (360) day year based on the actual number of days elapsed that funds are outstanding hereunder. Payments made on account hereof shall be applied first to the payment of late fees, then to the payment of accrued and unpaid interest, and the remainder shall be credited to principal, or in such other order and proportion as the Lender, in its sole discretion, may elect from time to time.

If an Event of Default occurs, then the entire principal sum outstanding, together with accrued interest thereon, fees and costs, if any, shall at once become due and payable at the option of the Lender without further notice. Failure to exercise any of the options aforementioned or the failure to exercise any other option herein or in the Deed of Trust provided for shall not constitute a waiver of the right to exercise the same in the event of any subsequent Event of Default. Acceleration of maturity, once claimed, by the Lender, may at its option be rescinded by an instrument in writing to that effect; however, the tender and acceptance of a partial payment or partial performance shall not, by itself, affect or rescind such acceleration of maturity.

Upon the occurrence of an Event of Default, the Lender may, in the Lender's sole discretion and without notice or demand, in addition to any other remedy the Lender may exercise, raise the rate of interest accruing on the unpaid principal balance of this Note by five (5) percentage points above the interest rate otherwise applicable hereunder (the "Default Rate"), regardless of whether the holder elects to accelerate the unpaid principal balance as a result of such Event of Default. If judgment is entered against the Borrower on this Note, the amount of such judgment entered (which may include principal, interest, fees and costs) shall bear interest at such Default Rate as of the date of entry of judgment.

In the event any installment due under this Note is paid more than five (5) days after the date when the same is due, or in the event the entire balance of principal remaining unpaid, plus interest accrued not previously paid, and fees and costs are not paid in full on the Maturity Date, then the Lender shall be entitled to collect a "late charge" in an amount equal to five percent (5%) of all unpaid amounts.

In the event it shall become necessary to employ counsel to collect this obligation or to protect the security hereof, the Borrower agrees to pay attorney's fees, whether suit be brought or not. The Borrower also agrees to pay all other costs and expenses connected with collection, the protection of the security, the defense of any counterclaim, the enforcement (including without limitation, as a part of any proceeding brought under the Bankruptcy Reform Act of 1978, as

- 2 -

amended) of any remedies herein provided for, or provided for in the Deed of Trust and the enforcement of any guaranty.

This Note may be prepaid in full or in part at any time, without premium or penalty.  Any partial prepayment shall be applied against the principal sum then outstanding and shall not postpone the due date of any subsequent installment or change the amount of any such installment.

This Note shall be the joint and several obligations of the makers hereof (if more than one) and shall apply to and bind, them and each of them and their respective heirs, successors and personal representatives and assigns.  The joint and several obligations of each of the makers shall be absolute and unconditional and shall remain in full force and effect until this Note is paid in full and, until such payment is made, shall not be discharged, affected, modified or impaired with respect to any maker upon the happening from time to time of any event including, without limitation, the invalidity or unenforceability of the obligations hereunder with respect to any of the other makers or any matter which would result in the release or discharge of any of the other makers.

The Borrower and any endorsers, guarantors and sureties jointly and severally waive presentment, protest and demand, notice of protest, demand and dishonor, and any and all lack of diligence or delays in the collection or enforcement hereof and expressly agree that this Note, or any payment hereunder, may be extended from time to time without in any way affecting the liability of the Borrower or any endorser, guarantor or surety hereof.  Borrower waives its right to trial by jury with respect to any proceedings hereunder.

The validity and construction of this Note and all matters pertaining thereto are to be determined according to the laws of the District of Columbia.

In the event any provision of this Note (or any part of any provision) is held by a court of competent jurisdiction to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provision (or remaining part of the affected provision) of this Note; but this Note shall be construed as if such invalid, illegal or unenforceable provision (or part thereof) had not been contained in this Note, but only to the extent it is invalid, illegal or unenforceable.

The Borrower represents and warrants that the loan evidenced by this Note was made and transacted solely for the purpose of carrying on or acquiring a business or commercial enterprise.

As used in this Note, the singular shall include the plural and the plural shall include the singular, where the context shall so require.

This Note shall be the obligation of the maker hereof and shall apply to and bind it and its respective successors, personal representatives and assigns.

This Note provides for the making of a loan by Lender, in its capacity as a lender, to the Borrower, in its capacity as a borrower, and for the payment of interest and repayment of principal by the Borrower to Lender.  The relationship between Lender and the Borrower is limited to that of creditor/secured party, on the one hand, and debtor, on the other hand.  Nothing

contained in this Note shall be construed as permitting or obligating Lender to act as a financial or business advisor or consultant to Borrower, as permitting or obligating the Lender to control Borrower or to conduct Borrower's operations, as creating any fiduciary obligation on the part of Lender to Borrower, or as creating any joint venture, agency, or other relationship between the parties other than as explicitly and specifically stated in this Note.  The Borrower acknowledges that it has had the opportunity to obtain the advice of experienced counsel of its own choosing in connection with the negotiation and execution of this Note, and to obtain the advice of such counsel with respect to all matters contained herein, including, without limitation, the provision for waiver of trial by jury.  The Borrower further acknowledges that it is experienced with respect to financial and credit matters and has made its own independent decision to apply to Lender for credit and to execute and deliver this Note.

All notices, demands, requests and other communications required pursuant to the provisions of this Note shall be in writing and shall be deemed to have been properly given or served for all purposes when presented personally or sent by United States Registered or Certified Mail - Return Receipt Requested, postage prepaid, to the Borrower at:  12151 Street, N.E., Washington, DC 20002, and to the Lender at the address stated in the first paragraph of this Note.

The Lender and Borrower may designate a change of address by notice in writing to the other party.  Whenever in this Note the giving of notice by mail or otherwise is required, the giving of such notice may be waived in writing by the person entitled to receive such notice.

It is the intention of the Borrower and the Lender to conform strictly to applicable usury laws.  Accordingly, if the transactions contemplated hereby would be usurious under applicable law (including the laws of the District of Columbia and the laws of the United States of America) then, in that event, notwithstanding anything to the contrary in any agreement entered into in connection with or as security for this Note, it is agreed as follows:  (i) the aggregate of all consideration which constitutes interest under applicable law that is contracted for, charged or received under this Note or under any of the other aforesaid agreements or otherwise in connection with this Note shall under no circumstances exceed the maximum amount of interest allowed by applicable law, and any excess shall be credited on this Note by the Lender (or, if this Note shall have been paid in full, refunded to the Borrower) and (ii) in the event that maturity of this Note is accelerated by reason of an election by the Lender resulting from any default hereunder or otherwise, or in the event of any required or permitted prepayment, then such consideration that constitutes interest may never include more than the maximum amount allowed by applicable law, and excess interest, if any, provided for in this Note or otherwise shall be cancelled automatically as of the date of such acceleration or prepayment and, if therefore prepaid, shall be credited on this Note (or if this Note shall have been paid in full, refunded to the Borrower).

From time to time during the term of the loan evidenced hereby, as required by Lender, the Lender shall obtain an appraisal of the Mortgaged Property, as well as an independent review of said appraisal acceptable to the Lender, which appraisals and reviews shall be satisfactory to the Lender in its sole judgment.  All appraisal and review costs incurred by the Lender in connection with the Mortgaged Property shall be paid by the Borrower.  In no event shall the amount due on account hereof exceed a loan-to-value ratio of seventy percent (70%) of the

appraised value of the Mortgaged Property, as determined by the Lender (the "Required LTV Ratio"). In the event Lender determines at any time during the term hereof, that the committed amount of the loan evidenced hereby exceeds the Required LTV Ratio, Borrower or the guarantors shall immediately, upon Lender's demand, curtail the principal amount hereof in an amount sufficient to reduce the loan-to-value ratio to said Required LTV Ratio.

In addition to all liens upon, and rights of set-off against the money, credit, stocks, bonds and/or securities or other property of any nature whatsoever of the Borrower given to the Lender by law, the Lender shall have a lien upon and a right of set-off against all money, credit, stocks, bonds and/or securities and other property of any nature whatsoever of the Borrower now or hereafter on deposit with, or held by, or in the possession of or on account with the Lender, whether held in a general or special account or deposit, or for safe-keeping or otherwise; and every such lien and right of set-off may be exercised without demand upon or notice to the Borrower, upon an Event of Default. No lien or right of set-off shall be deemed to have been waived by any act or conduct on the part of the Lender, or by any neglect to exercise such right of set-off or to enforce such lien, or by any delay in so doing, and every right of set-off and lien shall continue in full force and effect until such right of set-off or lien is specifically waived or released by an instrument in writing executed by the Lender.

THE BORROWER HEREBY (I) COVENANTS AND AGREES NOT TO ELECT A TRIAL BY JURY OF ANY ISSUE TRIABLE OF RIGHT BY A JURY, AND (II) WAIVES ANY RIGHT TO TRIAL BY JURY FULLY TO THE EXTENT THAT ANY SUCH RIGHT SHALL NOW OR HEREAFTER EXIST. THIS WAIVER OF RIGHT TO TRIAL BY JURY IS SEPARATELY GIVEN, KNOWINGLY AND VOLUNTARILY, BY THE BORROWER, AND THIS WAIVER IS INTENDED TO ENCOMPASS INDIVIDUALLY EACH INSTANCE AND EACH ISSUE AS TO WHICH THE RIGHT TO A JURY TRIAL WOULD OTHERWISE ACCRUE. THE LENDER IS HEREBY AUTHORIZED AND REQUESTED TO SUBMIT THIS NOTE TO ANY COURT HAVING JURISDICTION OVER THE SUBJECT MATTER AND THE PARTIES HERETO, SO AS TO SERVE AS CONCLUSIVE EVIDENCE OF THE BORROWER'S WAIVER OF THE RIGHT TO JURY TRIAL. FURTHER, THE BORROWER HEREBY CERTIFIES THAT NO REPRESENTATIVE OR AGENT OF THE LENDER (INCLUDING THE LENDER'S COUNSEL) HAS REPRESENTED, EXPRESSLY OR OTHERWISE, TO THE BORROWER THAT THE LENDER WILL NOT SEEK TO ENFORCE THIS WAIVER OF RIGHT TO JURY TRIAL PROVISION.

SHOULD ANY SUMS BECOME DUE AND PAYABLE HEREUNDER BEYOND ANY APPLICABLE GRACE PERIOD, AND SUCH SUM IS NOT PAID WHEN AND AS DUE, TIME BEING OF THE ESSENCE, BORROWER AUTHORIZES ANY ATTORNEY ADMITTED TO PRACTICE BEFORE ANY COURT OF RECORD IN THE UNITED STATES TO CONFESS JUDGMENT AGAINST BORROWER WITHOUT PRIOR NOTICE OR OPPORTUNITY OF BORROWER FOR PRIOR HEARING, IN FAVOR OF LENDER, FOR THE FULL SUM DUE HEREON, PLUS COURT COSTS AND ATTORNEYS' FEES OF FIFTEEN PERCENT (15%) OF THE TOTAL AMOUNT DUE HEREUNDER. NOTWITHSTANDING THE AMOUNT OF SUCH JUDGMENT, LENDER AGREES BY ACCEPTING THIS NOTE TO USE REASONABLE EFFORTS TO OBTAIN LEGAL COUNSEL WHO WILL CHARGE CREDITOR FOR SERVICES ON AN HOURLY BASIS, AT HIS OR HER, CUSTOMARY HOURLY RATE(S) AND ONLY FOR TIME EXPENDED

AND ACTUAL EXPENSES INCURRED, AND LENDER AGREES NOT TO ENFORCE A JUDGMENT FOR LEGAL FEES AGAINST BORROWER IN AN AMOUNT IN EXCESS OF THE FEES AND EXPENSES ACTUALLY CHARGED TO LENDER FOR SERVICES RENDERED BY, AND FOR ACTUAL EXPENSES INCURRED BY, ITS COUNSEL IN CONNECTION WITH SUCH CONFESSION OF JUDGMENT AND THE COLLECTION OF ALL AMOUNTS OWED BY BORROWER TO LENDER AND, UPON THE ENTRY OF JUDGMENT, BORROWER WAIVES THE BENEFIT OF ANY AND EVERY STATUTE, ORDINANCE, OR RULE OF COURT WHICH MAY BE LAWFULLY WAIVED CONFERRING UPON BORROWER ANY RIGHT OR PRIVILEGE OR EXEMPTION, STAY OF EXECUTION OR SUPPLEMENTARY PROCEEDINGS, OR OTHER RELIEF FROM THE ENFORCEMENT OR IMMEDIATE ENFORCEMENT OF A JUDGMENT OR RELATED PROCEEDINGS ON A JUDGMENT.  BORROWER CONSENTS TO VENUE IN THE DISTRICT OF COLUMBIA WITH RESPECT TO THE INSTITUTION OF AN ACTION CONFESSING JUDGMENT HEREON, REGARDLESS OF WHERE VENUE WOULD OTHERWISE BE PROPER.  ANY JUDGMENT ENTERED AGAINST BORROWER, WHETHER BY CONFESSION OR OTHERWISE, SHALL BEAR INTEREST AT A RATE WHICH IS THE HIGHEST RATE OF INTEREST OWING BY BORROWER ON THE DATE OF JUDGMENT.  THE AUTHORITY AND POWER TO APPEAR FOR AND ENTER JUDGMENT AGAINST BORROWER SHALL NOT BE EXHAUSTED BY ONE OR MORE EXERCISES THEREOF, OR BY ANY IMPERFECT EXERCISE THEREOF, AND SHALL NOT BE EXTINGUISHED BY ANY JUDGMENT ENTERED PURSUANT THERETO; SUCH AUTHORITY AND POWER MAY BE EXERCISED ON ONE OR MORE OCCASIONS, FROM TIME TO TIME, IN THE SAME OR DIFFERENT JURISDICTIONS AS OFTEN AS THE LENDER OR ITS ASSIGNS SHALL DEEM NECESSARY OR ADVISABLE UNTIL ALL SUMS DUE HEREUNDER HAVE BEEN PAID IN FULL. THERE SHALL NOT BE A MERGER OF THIS NOTE, AND A JUDGMENT OBTAINED PURSUANT TO THE AUTHORITY AND POWER TO APPEAR FOR AND ENTER JUDGMENT AGAINST BORROWER SET FORTH ABOVE, WHEN SUCH A JUDGMENT IS OBTAINED.

Notwithstanding anything to the contrary contained elsewhere in this Note or in any of the Security Documents, the Lender shall never be obligated to make any advance under the loan or to issue any letter of credit if, in so doing, the Lender shall be in violation of or out of compliance with any "loans to one borrower limitation", "legal lending limit limitation" or any similar limitation or regulation to which the Lender may now or hereafter be subject at any time under any existing or future law, rule, regulation, restriction, order or otherwise.  The Borrower and any guarantors of this Note expressly agrees that in determining whether the Lender is in compliance with such limitations or regulations, all loans, letters of credit and other credit exposure to persons or entities related to or affiliated with the Borrower and/or related to or affiliated with one or more of the guarantors of the loan (including, but not limited to, loans, letters of credit or other credit exposure originated or incurred after the date of this Note) will be included for purposes of computing the Lender's overall credit exposure.

Time is of the essence with respect to all provisions of this Note.

*[signature follows on next page]*

IN WITNESS WHEREOF, the undersigned has executed these presents under seal the day and year set forth above.

433 KENNEDY ST HOLDINGS LLC, a
District of Columbia limited liability company

**\*\*note
all recordation costs
are to be incurred
by Lender**

By: _____ [SEAL]
Charles Paret,
Manager

429 KENNEDY ST HOLDINGS LLC, a
District of Columbia limited liability company

By: _____ [SEAL]
Charles Paret,
Manager

THIS IS TO CERTIFY that this is the Deed of Trust Note described in a certain Deed of Trust and Security Agreement to secure DION DAVITIAN, bearing even date herewith, secured on premises described on "EXHIBIT A" attached hereto and incorporated herein by this reference, said Deed of Trust Note and Deed of Trust and Security Agreement having been executed in my presence.

_____ [SEAL]
Notary Public

My commission expires:

"EXHIBIT A"

All that certain land located in the District of Columbia and being more particularly described as follows:

Lot 42 in Square 3260 in the subdivision made by Lewis and Sarah Guglielmo, as per plat recorded in Liber 96, Folio 177, in the Office of the Surveyor for the District of Columbia.

Property Address:  433 Kennedy Street, NW, Washington, DC 20011

Tax ID #:  SSL 3260/0042

AND

Lot 40 in Square 3260 in the subdivision made by Margaret Polwarth and Marth F. Reiss, per plat recorded in Liber 96, Folio 177, in the Office of the Surveyor for the District of Columbia.

Property Address:  429 Kennedy Street, NW, Washington, DC 20011

Tax ID #:  SSL 3260/0040

# EXHIBIT B

GUARANTY AGREEMENT

THIS GUARANTY AGREEMENT, made this 10th day of July, 2020, by CHARLES PARET, hereinafter referred to as the "Guarantor", in favor of and for the benefit of DION DAVITIAN, hereinafter referred to as the "Beneficiary".

WITNESSETH:

IN ORDER to induce the Beneficiary to make a loan to 429 KENNEDY ST HOLDINGS LLC, a District of Columbia limited liability company and 433 KENNEDY ST HOLDINGS LLC, a District of Columbia limited liability company, hereinafter collectively referred to as the "Borrower", in the principal amount of EIGHT HUNDRED SEVENTY FIVE THOUSAND AND NO/100 DOLLARS ($875,000.00), as evidenced by that certain Deed of Trust Note of the Borrower to the order of the Beneficiary of even date herewith, hereinafter referred to as the "Note", and in further consideration of the premises and of the sum of Ten and No/100 Dollars ($10.00) lawful money of the United States of America, the receipt of which is hereby acknowledged by the Guarantor, the Guarantor covenants and agrees as follows:

ARTICLE I

DEFINITIONS

1.0     Definitions.

The Guarantor agrees that, unless the context otherwise specifies or requires, the following terms shall have the meaning herein specified, such definitions to be applicable equally to the singular and the plural forms of such terms and to all genders.

(a)     Beneficiary - The party hereinabove designated as such, its successors and assigns.

(b)     Borrower - The parties hereinabove designated as such, their successors and assigns.

(c)     Deed of Trust - That certain Deed of Trust and Security Agreement made by the Borrower to secure the Beneficiary dated of even date herewith, as same may from time to time be amended.

(d)     Indebtedness - The principal of and the interest on and all other amounts, payments and premiums due on account of the Note, and all other indebtedness of the Borrower to the Beneficiary payable pursuant to or secured by the Security Documents.

(e)     Intentionally Omitted.

(f)     Mortgaged Property - The property described as such in the Deed of Trust.

(g)     Note - The Deed of Trust Note of the Borrower to the order of the Beneficiary dated of even date herewith in the principal amount of EIGHT HUNDRED SEVENTY FIVE

1

THOUSAND AND NO/100 DOLLARS ($875,000.00), and all modifications, renewals and extensions thereof and substitutions and replacements therefor.

(h)     Obligations - Any and all of the covenants, promises and other obligations (other than the Indebtedness) made or owing by the Borrower to or due to the Beneficiary pursuant to or as otherwise set forth in the Note or the Security Documents.

(i)     Security Documents - The Deed of Trust and any other instrument or instruments described or characterized as such in the Deed of Trust.

ARTICLE II

THE GUARANTY

2.0     Guaranty.

The Guarantor hereby unconditionally and irrevocably guarantees to the Beneficiary:

(a)     the due and punctual payment in full (and not merely the collectability) of the Indebtedness; and

(b)     the due and punctual performance by the Borrower of the Obligations.

2.1     Guaranty Unconditional.

The Guarantor expressly agrees that the Beneficiary may, in its sole and absolute discretion, without notice or further assent of the Guarantor and without in any way releasing, affecting or in any way impairing the obligations and liabilities of the Guarantor hereunder:

(a)     waive compliance with, or any defaults under, or grant any other indulgences under or with respect to the Note or the Security Documents; and

(b)     modify, amend, change or terminate any provision of the Note or the Security Documents; and

(c)     grant extensions or renewals of or with respect to the Note or the Security Documents; and

(d)     effect any release, subordination, compromise or settlement in connection with the Note or the Security Documents; and

(e)     agree to the substitution, exchange, release or other disposition of the Mortgaged Property or ally part thereof; and

(f)     make advances for the purpose of performing ally term, provision or covenant contained in the Note or the Security Documents with respect to which the Borrower shall then be in default; and

(g)     assign, pledge, hypothecate or otherwise transfer the Note or the Security Documents or this Guaranty Agreement or any interest therein; and

(h)     deal in all respects with the Borrower as if this Guaranty Agreement were not in effect.

The obligations and liabilities of the Guarantor under this Guaranty Agreement shall be unconditional, irrespective of the genuineness, validity, priority, regularity or enforceability of the Note or the Security Documents or any other circumstances, including, without limitation, bankruptcy or other debtor relief proceedings which might otherwise constitute a legal or equitable discharge and/or limitation of liability of the Borrower or of a surety of Guarantor.

2.2     <u>Guaranty Primary</u>.

The obligations and liabilities of the Guarantor under this Guaranty Agreement shall be primary, direct and immediate and shall not be conditional or contingent upon pursuit or enforcement by the Beneficiary of any remedies it may have against the Borrower with respect to the Note or the Security Documents, whether pursuant to the terms thereof or by operation of law.

Without limiting the generality of the foregoing, the Beneficiary shall not be required to make any demand upon the Borrower, or to sell the Mortgaged Property or otherwise pursue, enforce or exhaust its remedies against the Borrower or the Mortgaged Property either before concurrently with or after pursuing or enforcing its right and remedies hereunder.  Any one or more successive or concurrent actions or proceedings may be brought against the Guarantor under this Guaranty Agreement, either in the same action, if any, brought against the Borrower or in separate actions or proceedings, as often as the Beneficiary may deem expedient or advisable.

2.3     <u>Certain Waivers, by Guarantor</u>.

The Guarantor hereby expressly waives (a) presentment and demand for payment of the Indebtedness and protest of nonpayment; and (b) notice of acceptance of this Guaranty Agreement and of presentment, demand and protest; and (c) notice of any default hereunder or under the Note or the Security Documents and notice of all indulgences; and (d) demand for observance, performance or enforcement of any of the terms or provisions of this Guaranty Agreement or the Note or the Security Documents; and (e) any right or claim of right to cause a marshalling of the assets of the Borrower; and (f) all other notices and demands otherwise required by law which the Guarantor may lawfully waive; and (g) any defense based upon the incapacity of the Guarantor; and (h) any defense based upon any election of remedies by the Beneficiary which impairs any subrogation rights of the Guarantor; and (i) any duty of the Beneficiary to disclose to the Guarantor any facts the Beneficiary may know regarding the Borrower.  The Guarantor hereby (a) covenants and agrees not to elect a trial by jury of any issue triable of right by a jury, and (b) waives any right to trial by jury fully to the extent that any such right shall now or hereafter exist.  This waiver of the right to trial by jury is separately given, knowingly and voluntarily, by the Guarantor, and this waiver is intended to encompass individually each instance and each issue as to which the right to a jury trial would otherwise

accrue.  The Beneficiary is hereby authorized and requested to submit this agreement to any court having jurisdiction over the subject matter and the parties hereto, so as to serve as conclusive evidence of Guarantor's waiver of the right to jury trial.  Further, the Guarantor hereby certifies that no representative or agent of the Beneficiary (including the Beneficiary's counsel) has represented, expressly or otherwise, to the Guarantor that the Beneficiary will not seek to enforce this waiver of right to jury trial provision.

2.4     Reimbursement for Expenses.

        In the event the Beneficiary shall commence any action or proceeding for the enforcement of this Guaranty Agreement, then the Guarantor will reimburse the Beneficiary, promptly, upon demand, for any and all expenses incurred by the Beneficiary in connection with such action or proceeding, including, without limitation, reasonable attorney's fees.

2.5     Acceleration.

        Anything in this Guaranty Agreement or in the Note or the Security Documents to the contrary notwithstanding, the Beneficiary may, at its option, accelerate the maturity of the Indebtedness as to the Guarantor in the event of the occurrence or happening, from time to time, of any one or more of the following:

        (a)     If by the order of a court having or claiming jurisdiction, a trustee, receiver or liquidator of the Guarantor shall be appointed and such order shall not be discharged or dismissed within sixty (60) days after such appointment; or

        (b)     If the Guarantor shall file a petition in bankruptcy or for an arrangement or for reorganization pursuant to the Bankruptcy Reform Act of 1978, as amended, or any similar law, federal or state, or if, by decree of a court having or claiming jurisdiction, the Guarantor shall be adjudicated a bankrupt, or be declared insolvent, or shall make an assignment for the benefit of creditors, or shall admit in writing his inability to pay his debts generally as they become due, or shall consent to the appointment of a custodian, trustee, receiver or liquidator of all or any part of his property, or shall file an answer admitting the material allegations of any petition filed against him in any bankruptcy, reorganization or insolvency proceeding; or

        (c)     If any of the creditors of the Guarantor, or any other person shall file a petition in bankruptcy against the Guarantor, or for reorganization of the Guarantor pursuant to the Bankruptcy Reform Act of 1978, as amended, or any similar law, federal or state, and if such petition shall not be discharged or dismissed within sixty (60) days after the date on which such petition was filed; or

        (d)     If final judgment for the payment of money shall be rendered against the Guarantor, and the Guarantor shall not discharge the same or cause it to be discharged within thirty (30) days from the entry thereof, or shall not appeal therefrom or from the order, decree or process upon which or pursuant to which said judgment was granted, based or entered, and secure a stay of execution pending such appeal; or

        (e)     If the Guarantor, if an entity, shall dissolve or liquidate, and such dissolution or liquidation is not in connection with a reorganization, merger, or consolidation approved in

writing by the Beneficiary or, if the Guarantor is an individual, upon the death, incompetency or permanent disability of such guarantor; or

  (f)  If any representation or warranty made by the Guarantor, or others on behalf of the Guarantor, under or pursuant to this Guaranty Agreement, including, but not limited to any representation made in any financial statement provided to the Beneficiary, shall prove to have been false or misleading in any material respect as of the date on which such representation or warranty was made; or

  (g)  If the Beneficiary shall determine, in its sole discretion, that any material adverse change has occurred in the ability of the Guarantor to meet his obligations hereunder; or

  (h)  If an Event of Default, as therein defined, occurs under the Note or the Security Documents.

2.6  <u>Rescission of Election to Accelerate</u>.

  In the event the Beneficiary shall elect to accelerate the maturity of the Indebtedness as to the Guarantor pursuant to the provisions of this Guaranty Agreement, such election may be rescinded by written acknowledgment to that effect by the Beneficiary; provided, however, that the acceptance of a partial payment on account of the Indebtedness shall not alone affect or rescind such election.

2.7  <u>Subordination - Subrogation</u>.

  In the event the Guarantor shall advance any sums to the Borrower, or in the event the Borrower has heretofore or shall hereafter become indebted to the Guarantor, then all such sums and indebtedness shall be subordinate in all respects to the amounts then or thereafter due on account of the Indebtedness.  Nothing contained in this Guaranty Agreement shall be construed to give the Guarantor any right of subrogation in or to the Note or in or to the Security Documents, or all or any part of the interest of the Beneficiary therein.  The Guarantor waives any right to enforce any remedies the Guarantor may have against the Borrower and any right to participate in any security for the repayment of the Indebtedness now or hereafter held by the Beneficiary.  Guarantor hereby irrevocably waives any and all rights he may have at any time (whether arising directly or indirectly, by operation of law or contract) to assert any claim against Borrower on account of the Indebtedness, including without limitation, any and all rights of subrogation, reimbursement, exoneration, contribution or indemnity.  This Guaranty Agreement and Guarantor's obligations hereunder shall continue to be effective or be reinstated, as the case may be, if at any time payment of any of the Indebtedness is rescinded or must otherwise be restored or returned by the Beneficiary, all as though such payment had not been made.  The Beneficiary's good faith determination as to whether a payment must be restored or returned shall be binding on Guarantor.

ARTICLE III

REPRESENTATIONS AND WARRANTIES

3.0  <u>Representations and Warranties</u>.

Guarantor hereby represents and warrants to Beneficiary that:

3.1    Intentionally Omitted.

3.2    Validity of Guaranty Agreement.

This Guaranty Agreement, when executed and delivered by the Guarantor, will constitute the legal, valid and binding obligation of the Guarantor in accordance with its terms.

3.3    Other Information.

All other information, reports, papers and data given to Beneficiary with respect to the Guarantor are accurate and correct in all material respects and complete insofar as completeness may be necessary to give Beneficiary a true and accurate knowledge of the subject matter. No materially adverse change has occurred in the financial condition reflected therein since the respective dates thereof and no material additional liabilities have been incurred by the Guarantor since the dates thereof other than the undertakings contemplated herein or as otherwise approved in writing by the Beneficiary.

3.4    Litigation.

There is not now pending against or affecting the Guarantor, nor, to the knowledge of the Guarantor, is there threatened, any action, suit or proceeding at law or in equity or by or before any administrative agency which if adversely determined would materially impair or affect the financial condition or operation of the Guarantor.

ARTICLE IV

ADDITIONAL AFFIRMATIVE COVENANTS

4.0    Affirmative Covenants.

Until the entire Indebtedness shall have been paid in full and until the obligations and liabilities of the Guarantor hereunder have been discharged, the Guarantor hereby covenants and agrees as follows:

4.1    Intentionally Omitted.

4.2    Further Assurances.

The Guarantor will make, execute, acknowledge and deliver all and every such further acts and assurances as the Beneficiary shall from time to time require for confirming or carrying out the intentions or facilitating the performance of the terms of this Guaranty Agreement.

4.3    Financial Records - Inspection.

Guarantor will deliver to the Beneficiary a current financial statement and income tax returns of the Guarantor and such other financial information required by Beneficiary in accordance with the Deed of Trust.

4.4   Estoppel Certificates.

Within ten (10) days following any request of the Beneficiary so to do, the Guarantor will furnish the Beneficiary and such other persons as the Beneficiary may direct with a written certificate, duly acknowledged, stating in detail whether or not any credits, offsets or defense exist with respect to this Guaranty Agreement.

ARTICLE V

MISCELLANEOUS

5.1   No Partnership - Third Parties.

Nothing contained in this Guaranty Agreement shall be construed in a manner to create any relationship between the Guarantor and the Beneficiary other than the relationship of guarantor and lender and the Guarantor and the Beneficiary shall not be considered partners or co-venturers for any purpose.  The terms and provisions of this Guaranty Agreement are for the benefit of the Beneficiary and its successors, assigns, endorsees and transferees and all persons claiming under or through it and no other person shall have any right or cause of action on account thereof.

5.2   Severability.

In the event any one or more of the provisions of this Guaranty Agreement shall for any reason be held to be invalid, illegal or unenforceable, in whole or in part or in any respect, or in the event any one or more of the provisions of this Guaranty Agreement operate or would prospectively operate to invalidate this Guaranty Agreement, then and in either of those events, at the option of the Beneficiary, such provision or provisions only shall be held for naught and shall not affect any other provision of this Guaranty Agreement and the remaining provisions of this Guaranty Agreement shall remain operative and in full force and effect and shall in no way be affected, prejudiced or disturbed thereby.

5.3   Successors and Assigns.

All of the grants, covenants, terms, provisions and conditions of this Guaranty Agreement shall apply, bind and inure to the benefit of, the successors and assigns of the Guarantor and the endorsers, transferees, successors and assigns of the Beneficiary, and all persons claiming under or through any of them.

5.4   Modification - Waiver.

None of the terms or provisions of this Guaranty Agreement may be changed, waived, modified, discharged or terminated except by instrument in writing executed by the party or parties against which enforcement of the change, waiver, modification, discharge or termination is asserted.  None of the terms or provisions of this Guaranty Agreement shall be deemed to have been abrogated or waived by reason of any failure or failures to enforce the same.

5.5    <u>No Conditions Precedent to Exercise of Remedies</u>.

The Guarantor shall not be relieved of any obligation by reason of the failure of Beneficiary to comply with any request of Guarantor or of any other person to take action to foreclose on the Deed of Trust or otherwise to enforce any provisions of the Note or the Security Documents, or by reason of the release, regardless of consideration, of all or any part of the Mortgaged. Property, or by reason of any agreement of stipulation between any subsequent owner of the Mortgaged Property and Beneficiary extending the time of payment or modifying the terms of the Note or the Security Documents without first having obtained the consent of the Guarantor; and in the latter event, the Guarantor shall continue to be liable to guarantee payment according to the terms of any such extension or modification agreement, unless expressly released and discharged in writing by Beneficiary.

5.6    <u>Remedies Cumulative and Concurrent</u>.

No remedy herein conferred upon or reserved to the Beneficiary is intended to be exclusive of any other remedy or remedies, and each and every such remedy shall be cumulative, and shall be in addition to every other remedy given hereunder or now or hereafter existing at law or in equity or by statute. Every right, power and remedy given by this Guaranty Agreement to the Beneficiary shall be concurrent and may be pursued separately, successively or together against the Guarantor; and every right, power and remedy given by this Guaranty Agreement to the Beneficiary may be exercised from time to time as often as may be deemed expedient by the Beneficiary. Nothing in this Guaranty Agreement shall affect the obligation of the Borrower to pay the Indebtedness in the manner and at the time and place therein respectively expressed.

5.7    <u>Strict Performance</u>.

No delay or omission of the Beneficiary to exercise any right, power or remedy herein conferred upon or reserved to the Beneficiary shall impair any such right, power or remedy or shall be construed to be a waiver thereof. No delay or omission on the part of the Beneficiary to exercise any option for acceleration of the maturity of the Indebtedness or any other option granted to the beneficiary hereunder in any one or more instances, or the acceptance of the Beneficiary of any partial payment on account of the Indebtedness, shall constitute a termination or waiver of any such option and each such option shall remain continuously in full force and effect.

5.8    <u>Right of Set-Off</u>.

Upon the occurrence of a default hereunder, under the Note, or under the Security Documents, the Beneficiary may, and is hereby authorized at any time and from time to time, without notice to the Guarantor (any such notice being expressly waived by the Guarantor) and to the fullest extent permitted by law, to set off and apply any and all deposits (general or special, time or demand, provisional or final) at any time held and other indebtedness at any time owing by the Beneficiary to or for the credit or the account of the Guarantor, against any and all obligations of the Guarantor now or hereafter existing under this Guaranty Agreement, irrespective of whether the Beneficiary shall have made any demand under this Guaranty Agreement, and although such obligations may be contingent or unmatured. The Beneficiary

agrees promptly to notify the Guarantor after any such set-off and application made by the Beneficiary, provided that the failure to give such notice shall not affect the validity of such set-off and application.  The rights of the Beneficiary hereunder are in addition to other rights and remedies (including, without limitation, other rights of set-off) which the Beneficiary may have.

5.9     Captions and Headings.

The captions and headings contained in this Guaranty Agreement are included herein for convenience of reference only and shall not be considered a part hereof and are not in any way intended to limit or enlarge the terms hereof.

5.10    Counterparts.

This Guaranty Agreement may be executed in any number of counterparts, each of which shall be considered an original for all purposes; provided, however, that all such counterparts shall together constitute one and the same instrument.

5.11    Applicable Law.

This Guaranty Agreement shall be governed by and construed, interpreted and enforced in accordance with and pursuant to the laws of the District of Columbia.

5.12    Time of Essence.

Time shall be of the essence of each and every provision of this Guaranty Agreement.

5.13    Interest of Guarantor.

The Guarantor hereby represents and warrants that he has a financial interest in the Borrower or will receive a direct material benefit from the extension of credit to the Borrower and the Guarantor further represents and warrants that, prior to or contemporaneously with the execution and delivery hereof, he has examined or had an opportunity to examine the Note and the Security Documents.

5.14    Indemnity - Hold Harmless.

(a)     Guarantor shall forever indemnify and save the Beneficiary harmless from and against all expenditures, liability, loss, damages, costs and expenses, including, without limitation, counsel fees, which Beneficiary may for any cause at any time sustain or incur pursuant to any federal, state or municipal environmental law or regulation, by reason of any hazardous waste or hazardous substance, the presence of which on the Mortgaged Property is prohibited by any such federal, state or municipal environmental law or regulation.  The Guarantor shall cause payment to be made to Beneficiary on account of any such liability, loss, damages, costs or expenses before (i) any "clean-up" is commenced by any federal, state or municipal authority, and (ii) Beneficiary shall be compelled to make any payment on account thereof.  The Guarantor shall satisfy and discharge any judgment recovered against Beneficiary in connection with the foregoing promptly after the entry thereof, unless an appeal is taken and bonds to stay the collection thereof are procured and filed by the Guarantor.  In the event a final



judgment is entered against Beneficiary after appeal, Guarantor shall satisfy and discharge such judgment.  Beneficiary may in its own discretion make any payment sustained or incurred by reason of any of the foregoing, and Guarantor shall promptly repay to Beneficiary the amount of such payment, together with interest thereon from the day of such payment at the default rate set forth in the Note.  This indemnity shall survive repayment of the indebtedness by the Borrower, and Guarantor's liability hereunder shall arise immediately upon discovery of any such unacceptable environmental condition.

(b)     In the event any real or personal property secures either any of the Indebtedness or the Obligations and the Beneficiary acquires the same after a foreclosure sale as to real property or a public auction sale as to personal property, Guarantor agrees to indemnify and hold the Beneficiary harmless from any loss, cost, or expense which the Beneficiary may sustain as a result of: (i) selling the real or personal property so acquired for less than the Indebtedness or sums owed on account of the Obligations, as the case may be, provided, however, that any such sale by the Beneficiary is done in a commercially reasonable manner or (ii) any action brought against the Beneficiary under 548 or 544(b) of the United States Bankruptcy Code, as amended, on the ground that the consideration paid by the Beneficiary for the real or personal property was not "fair equivalent value," within the contemplation of 548 of the United States Bankruptcy Code, as amended, or 544(b) of the United States Bankruptcy Code, as amended, or any applicable state fraudulent conveyance act.

5.15   Notices.

All notices, demands, requests and other communications required pursuant to the provisions of this Guaranty Agreement shall be in writing and shall be deemed to have been properly given or served for all purposes when presented personally or sent by United States Registered or Certified Mail - Return Receipt Requested, postage prepaid, to the respective addresses as follows:

(a)     If to the Beneficiary, then to it at: 9201 Kristin Lane, Fairfax, Virginia 22032.

(b)     If to the Guarantor, then to him at: 1215 1 Street, N.E., Washington, DC 20002.

Any of the parties may designate a change of address by notice in writing to the other parties.  Whenever in this Guaranty Agreement the giving of notice by mail or otherwise is required, the giving of such notice may be waived in writing by the person or persons entitled to receive such notice.

5.16   CONFESSION OF JUDGMENT.

SHOULD ANY SUMS BECOME DUE AND PAYABLE HEREUNDER BEYOND ANY APPLICABLE GRACE PERIOD, AND SUCH SUM IS NOT PAID WHEN AND AS DUE, TIME BEING OF THE ESSENCE, GUARANTOR AUTHORIZES ANY ATTORNEY ADMITTED TO PRACTICE BEFORE ANY COURT OF RECORD IN THE UNITED STATES TO CONFESS JUDGMENT AGAINST GUARANTOR WITHOUT PRIOR NOTICE OR OPPORTUNITY OF GUARANTOR FOR PRIOR HEARING, IN FAVOR OF BENEFICIARY, FOR THE FULL SUM DUE HEREON, PLUS COURT COSTS AND ATTORNEYS' FEES OF FIFTEEN PERCENT (15%) OF THE TOTAL AMOUNT DUE

HEREUNDER.  NOTWITHSTANDING THE AMOUNT OF SUCH JUDGMENT, BENEFICIARY AGREES BY ACCEPTING THIS GUARANTY AGREEMENT TO USE REASONABLE EFFORTS TO OBTAIN LEGAL COUNSEL WHO WILL CHARGE CREDITOR FOR SERVICES ON AN HOURLY BASIS, AT HIS OR HER CUSTOMARY HOURLY RATE(S) AND ONLY FOR TIME EXPENDED AND ACTUAL EXPENSES INCURRED, AND BENEFICIARY AGREES NOT TO ENFORCE A JUDGMENT FOR LEGAL FEES AGAINST GUARANTOR IN AN AMOUNT IN EXCESS OF THE FEES AND EXPENSES ACTUALLY CHARGED TO BENEFICIARY FOR SERVICES RENDERED BY, AND FOR ACTUAL EXPENSES INCURRED BY, ITS COUNSEL IN CONNECTION WITH SUCH CONFESSION OF JUDGMENT AND THE COLLECTION OF ALL AMOUNTS OWED BY GUARANTOR TO BENEFICIARY AND, UPON THE ENTRY OF JUDGMENT, GUARANTOR WAIVES THE BENEFIT OF ANY AND EVERY STATUTE, ORDINANCE, OR RULE OF COURT WHICH MAY BE LAWFULLY WAIVED CONFERRING UPON GUARANTOR ANY RIGHT OR PRIVILEGE OR EXEMPTION, STAY OF EXECUTION OR SUPPLEMENTARY PROCEEDINGS, OR OTHER RELIEF FROM THE ENFORCEMENT OR IMMEDIATE ENFORCEMENT OF A JUDGMENT OR RELATED PROCEEDINGS ON A JUDGMENT.  GUARANTOR CONSENTS TO VENUE IN THE DISTRICT OF COLUMBIA WITH RESPECT TO THE INSTITUTION OF AN ACTION CONFESSING JUDGMENT HEREON, REGARDLESS OF WHERE VENUE WOULD OTHERWISE BE PROPER.  ANY JUDGMENT ENTERED AGAINST GUARANTOR, WHETHER BY CONFESSION OR OTHERWISE, SHALL BEAR INTEREST AT A RATE WHICH IS THE HIGHEST RATE OF INTEREST OWING BY BORROWER ON THE DATE OF JUDGMENT.  THE AUTHORITY AND POWER TO APPEAR FOR AND ENTER JUDGMENT AGAINST GUARANTOR SHALL NOT BE EXHAUSTED BY ONE OR MORE EXERCISES THEREOF, OR BY ANY IMPERFECT EXERCISE THEREOF, AND SHALL NOT BE EXTINGUISHED BY ANY JUDGMENT ENTERED PURSUANT THERETO; SUCH AUTHORITY AND POWER MAY BE EXERCISED ON ONE OR MORE OCCASIONS, FROM TIME TO TIME, IN THE SAME OR DIFFERENT JURISDICTIONS AS OFTEN AS THE BENEFICIARY OR ITS ASSIGNS SHALL DEEM NECESSARY OR. ADVISABLE UNTIL ALL SUMS DUE HEREUNDER HAVE BEEN PAID IN FULL. THERE SHALL NOT BE A MERGER OF THIS GUARANTY AGREEMENT, AND A JUDGMENT OBTAINED PURSUANT TO THE AUTHORITY AND POWER TO APPEAR FOR AND ENTER JUDGMENT AGAINST GUARANTOR SET FORTH ABOVE, WHEN SUCH A JUDGMENT IS OBTAINED.

*[signature follows on next page]*

IN WITNESS WHEREOF, the Guarantor has executed this Guaranty Agreement under seal the year and day first above written.

_____ [SEAL]
CHARLES PARET

DISTRICT OF COLUMBIA ) ss:

I, _Dave Murnane_ , a Notary Public in and for the District of Columbia, do hereby certify that CHARLES PARET, party to and who is personally well known (or satisfactorily proven) to me as the person who executed the foregoing instrument bearing date on the __14__ day of _____, 2017July, 2020, personally appeared before me in said District of Columbia and acknowledged said instrument to be his act and deed, and that he executed said instrument for the purposes therein contained.

Given under my hand and seal, this __14__ day of _____, 2017July, 2020.

_____ [SEAL]
Notary Public

My commission expires: _6/14/24_

- 12 -

EXHIBIT C

January 5, 2021

**VIA ELECTRONIC MAIL AND CERTIFIED MAIL**

433 Kennedy Street Holdings, LLC
429 Kennedy Street Holdings, LLC
Charles Paret

1215 1ST Street N.E.
Washington, DC 20002
cpp@colomariver.com

**Re:     Notice of Default**

Dear Charlie:

This Notice of Default is being delivered pursuant to the Deed of Trust Note dated July 10, 2020 (the "Note"), signed by 433 Kennedy Street Holdings, LLC and 429 Kennedy Street Holdings, LLC (collectively, "Borrower"), and the Guaranty Agreement dated July 10, 2020 (the "Guaranty"), signed by Charles Paret ("Guarantor"), both in favor of Dion Davitian ("Lender").

The Note and the Guaranty, together with all other documents evidencing or securing the loan (the "Loan"), are collectively referred to as the "Loan Documents".

The Loan matured on September 8, 2020. To date, Lender has not received Borrower's payment of the unpaid principal, interest and other sums pursuant to the Note. To date, the outstanding balance under the Note is **$962,500**, broken down as follows:

    $875,000 – original principal balance
    $43,750 – unpaid interest for 6 months
    $43,750 – late charge

If Lender does not receive immediate payment of the outstanding balance, Lender will pursue all rights and remedies available to Lender under law and otherwise. Lender reserves all claims and rights not expressly identified in this Notice of Default.

_____
Dion Davitian